**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A., a Florida professional association, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 6:13-CV-1228-ORL-18GJK |
| HEALTHTAP, INC., JEFFREY POLLARD, M.D., and JOHN DOES 1-12, | ) ) ) ) | |
| Defendants. | ) ) | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A. ("Plaintiff" or "NeuroCare"), individually and on behalf of all others similarly-situated, through counsel, hereby responds in opposition to the Federal Rule 12 (b) (6) motion to dismiss (Doc. 34) filed by defendants HealthTap, Inc. and Jeffrey Pollard, M.D. ("Defendants")

**INTRODUCTION**

On August 12, 2013, Plaintiff filed a two-count Class Action Complaint challenging Defendants' practice of faxing unsolicited advertisements. (Doc. 1). Count I alleges that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Count II alleges that defendants violated the common law of Conversion. On November 13, 2013, Defendants filed a Rule 12 (b) (6) Motion to Dismiss Plaintiff's TCPA Count and Conversion Count. (Doc. 34). Plaintiff voluntarily dismisses its Conversion Count. As a result, Plaintiff does not address any of Defendants' arguments regarding Conversion in this opposition brief.

Defendants' motion to dismiss raises three arguments that concern Plaintiff's TCPA Count. First, Defendants contend that the three faxes they sent to Plaintiff are not "advertisements" as that term is defined by the TCPA because the faxes did not ask Plaintiff for money. Second, Defendants argue that the three faxes contain "substantially compliant" opt out notices, and that full compliance with the TCPA is not necessary. Finally, Defendants contend that they "mooted" Plaintiff's claims by serving a Rule 68 Offer of Judgment[1] after Plaintiff filed its Motion for Class Certification.

All of Defendants' arguments fail. First, the subject faxes (<u>Exhibit A</u>) are indeed advertisements that tout the quality of Defendants' service and request Plaintiff to sign up to be a part of Defendants' "Medical Expert Network." That is sufficient to make the faxes advertisements for TCPA purposes. Second, the opt-out notices in the advertisements are not "substantially compliant" with the law; nor is "substantial compliance" the correct legal standard under the TCPA. Finally, Defendants' attempt to "pick off" the Plaintiff here was ineffective because Plaintiff had already diligently filed its motion for class certification **before** Defendants made their offer. As a result, Defendants' motion should be denied in its entirety.

---

[1] It is worth noting that Defendants offered Plaintiff $10,000 in their Rule 68 Offer of Judgment, which is much more than Plaintiff could hope to receive on an individual basis in this case. As a result, the Offer of Judgment is more like a "bribe" as discussed in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 951 (7th Cir. 2006) and *Janikowski v. Lynch Ford, Inc.*, No. 98 C 8111, 1999 WL 608714, *2 (N.D. Ill. Aug. 5, 1999) to pressure Plaintiff to abandon its class claims. As the *Janikowski* court explained:"[A] potential conflict of interest arises if a class representative is forced to consider a settlement offer made to her personally: '[T]he representative as offeree would be forced to balance h[er] personal liability for costs against the prospects of sharing with the class in any recovery. H[er] evaluation of the offer would therefore be tinged by self-interest and would tend to differ from that of absent class members.'" *Id.* at *2 (citation omitted).

## FACTS

**I.      Facts in Class Action Complaint.**

Plaintiff received three unsolicited fax advertisements from Defendants. (Doc. 1, ¶ 12); *see also* Exhibit A, copies of the three subject fax advertisements. The subject faxes do not contain a clear and conspicuous opt-out notice. (Doc. 1, ¶ 16). Additionally, the subject faxes do not contain a domestic toll free fax number as required by the TCPA. (Doc. 1, ¶ 16).

**II.     Relevant procedural facts.**

As a result of Defendants' conduct, on August 12, 2013, Plaintiff filed the subject Class Action Complaint that contains a separate "Class Representation Allegations" section. (Doc. 1, ¶¶ 20-28). Then on September 5, 2013, Plaintiff filed a Motion for Class Certification. (Doc. 10). On September 23, 2013, the Court entered an order staying Plaintiff's Motion for Class Certification pending further order of Court. (Doc. 17). On October 4, 2013, the Court entered another order indicating that Plaintiff's Motion for Class Certification is stayed and the parties shall propose a procedure and briefing schedule on Plaintiff's Motion for Class Certification when they file a proposed scheduling plan. (Doc. 12). On November 13, 2013, the parties then submitted a proposed scheduling plan that included a proposed briefing schedule on Plaintiff's Motion for Class Certification. (Doc. 33).

On September 4, 2013, Defendants submitted to Plaintiff a draft and unsigned document titled "Offer of Judgment" from a Bill Martin. Exhibit B. On September 9, 2013, Defendants attempted to file appearances for William L. Martin, III and A. Benjamin Gordon. (Doc. 11). However, on the following the day, this Court filed a "Notice to Counsel" that William L. Martin, III was not a member of the Middle District of Florida. (Doc. 12).

Then, on September 11, 2013, *six days after* Plaintiff filed its Motion for Class Certification, Defendants submitted a signed Fed. R. 68 Offer of Judgment from Defendants' attorney of record, A. Benjamin Gordon. <u>Exhibit C</u>. Plaintiff never accepted the Defendant's Offer of Judgment.

## **ARGUMENT**

"The court must view the complaint in the light most favorable to the Plaintiff..." *Beaudin v. Chase Home Finance LLC*, 12-cv-1084, 2012 WL 4903317 at *1 (M.D.Fla., Oct. 16, 2012) (Presnell, J.). A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id. citing* Fed. R. Civ. P. 8(a). This liberal pleading requirement does not require a plaintiff to plead with particularity every element of a cause of action. *Id.*, *citing Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). The complaint "'must be enough to raise a right to relief above the speculative level,' and cross 'the line from conceivable to plausible.'" *Id. quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950-51 (2009).

## I.     **Defendants' faxes are "advertisements" under the TCPA.**

Defendants argue that Plaintiff cannot state a TCPA claim because the faxes Defendant sent to Plaintiff are not "advertisements" under the TCPA. According to Defendant, its faxes are not advertisements because Defendants did not seek to obtain money from Plaintiff in return for joining Defendants' "Medical Expert Network," and the faxes were not pretexts for Plaintiff to pay Defendants money in the future. According to Defendants, their faxes were merely "informational," not commercial. Defendants are wrong on the facts and the law.

Based on the faxes at issue, Defendant Healthtap is a for profit internet business that markets an internet website and mobile "app" as a "platform for doctor-patient interaction online." Healthtap's business plan is to build its network of doctors to be able to market it – either by selling "premium" services to consumers, or by marketing its system to payors such as insurance companies. As with most free internet "social" startups like facebook or twitter, the first step to success is to build the social network, so that it can later be "monetized." In return for joining the network, Healthtap offers providers like Plaintiff the ability to market their services online. These are commercial purposes, not merely "informational" as Defendants would have it. The Defendants are not blasting fax advertisements to Plaintiff and the putative class for purely philanthropic purposes. By faxing their recruitment materials, Defendants seek to make the providers pay for the cost of advertising their business, which is exactly the evil that Congress intended to prohibit when it passed the TCPA. Plaintiff has met its pleading burden and Defendants' motion to dismiss Count I of the Complaint should be denied.

### A.     The TCPA's definition of "advertisement" is broad.

Congress passed the TCPA in 1991, prompted by "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs.*, 132 S.Ct. 740, 744 (2012). The TCPA provides expressly for private lawsuits and state and federal courts have concurrent jurisdiction over those lawsuits. *Id.* at 750. The TCPA outlaws multiple abuses of telephone technology and to combat these abuses, the TCPA broadly defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services . . ." 47 U.S.C. §227 (a) (5). The use of the phrase "any material" speaks to the broad nature of this definition, as does the fact that the definition covers all

5

material that advertises the commercial availably <u>or</u> quality of *any property, goods, or services. Id.* (emphasis added)*; See e.g. Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp 1162, 1165-1167 (S.D. Ind. 1997); and *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 686 (7th Cir. 2013) ("[W]e are tempted to ask what part of 'any' Turza finds hard to understand."). Furthermore, the TCPA is a remedial statute and "[r]emedial statutes should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Scarborough v. Atlantic Coast Line*, 178 F.2d 253, 258 (4th Cir. 1950).

> **B.     Defendants' faxes are advertisements as to the "commercial availability" and "quality" of their services.**

Faxes that have the effect and purpose of advertising services, property, or goods – whether directly or indirectly – violate the TCPA. The TCPA "bans certain practices invasive of privacy and directs the Federal Communications Commission ... to prescribe implementing regulations." *Mims*, 132 S.Ct. at 744.

Defendants' faxes are advertisements under the TCPA definition because they advertise the commercial availability and quality of their services. Each of the three faxes that Plaintiff received is nothing more than an advertisement touting how impressive Defendants' services are. <u>Exhibit A</u>. Here are a few of the declarations contained within those faxes:

- "The Wall Street Journal has declared HealthTap as its favorite platform for doctor-patient interaction online!."

- "The Wall Street Journal reported that HealthTap 'enables physicians to market themselves and build their practice's clientele' by attracting millions of patients online and through mobile devices, where users are 'able to see doctors impressive credentials.'"

- "Join us today!"

- HealthTap is "Featured in" The New York Times, Forbes, The Wall Street Journal, Time Magazine

- "I'm excited to share that your new free online mobile profile is available for you to claim"

- "in our groundbreaking interactive doctor directory on the world's largest and fastest growing Mobile Health Platform"

- "Claim it today at no cost, in seconds, and take advantage of: Intelligent search engine optimization…Powerful social media…Innovative mobile technology"

- "get instant exposure to millions everywhere seeking the best doctors"

The faxes at issue are advertisements as defined under the TCPA. The fact that Defendants will not ask Plaintiff to pay for joining their network does not change the fact that the faxes advertise the qualities and commercial availability of the network, nor does it excuse Defendants from complying with the TCPA and justify the cost-shifting inherent in fax advertising. There is no testimony or evidence at this stage regarding why Defendants sent the fax to Plaintiff, or what Plaintiff's obligations would be if they joined Defendants' network.

**C.**   **Defendants' attempt to narrow the definition of "advertisement" under the TCPA is unavailing and not supported by the TCPA or any case law.**

 Defendants' argument that because Plaintiff will never have to pay money to Defendants to help Defendants make a profit necessarily means that the advertisement is not an "advertisement" under the TCPA is improper. There is no case or FCC ruling that supports Defendants' conclusion. On the contrary, the FCC has concluded that "facsimile messages that promote goods or services even at no cost, such as…free consultations or seminars are unsolicited advertisements under the TCPA's definition." *In re Matter of Rules*

7

& *Regs*, at 3814. The reasoning is that "in many instances, 'free' seminars serve as a pretext to advertise commercial products and services." *Id*. When a fax "pitches a product or service under the guise of providing information about it" then it is an "advertisement." *Rudgayzer & Gratt v. Enine, Inc.*, 2004 WL 877852 at *8 (N.Y. App., Apr. 14, 2004).

Defendants contend that their "network" and "app" are purely "informational" and not "commercial." Defendants attempt to shoe-horn their advertisements into the FCC's carve-out for purely informational industry newsletters and the like. The FCC has stated that "facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. " *Holtzman v. Turza*, No. 08 C 2014, 2010 WL 4177150, at *3 (N.D. Ill. Oct. 19, 2010) (Gettelman, J.) *quoting In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005*, 2006 WL 901720, 21 F.C.C.R. 3787, at 3814-15 (Apr. 6, 2006).

Yet one only needs to glance at Defendants' advertisements to see that they are not newsletters providing "industry news" or "legislative updates" or "employee benefit information" or the like. The entire content of the ads is to promote what a great product Defendants market. Defendants cite to *Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F.Supp.2d 851, 852 (N.D.Ill. 2007) for support of their argument. However, the fax at issue in *Phillips Randolph* was a "research study." *Id*. at 852. The Court, not surprisingly, held that recruiting for a "research study" was not an advertisement. *Id*. Additionally, the plaintiff's Complaint failed to make allegations regarding whether the "research study" was a pretext to further advertisements. *Id*. The faxes here are very

different. Exhibit A. These faxes are without question advertisements regarding the "commercial availability" and "quality" of Defendants' services.

Defendants also rely upon *Phillip Long Dang v. XLHealth Corp.*, Case No. 09-CV-1076-RWS, 2011 WL 553826 (N.D. Ga., Feb. 7, 2011)  for support. This case is also similarly distinguishable. In *Phillip Long Dang*, the subject fax was for a "free seminar." *Id.* at *1. The court in Georgia held that the FCC's language "does not create a wholesale ban on free seminars, but instead only on ones which promote 'goods and services.'" *Id.* at *4. The court in Georgia then noted that the subject fax did not attempt to sell any goods or services to the recipient, and there was no pretext to sell goods or services in the future. *Id.* at *4. That type of fax is different than the faxes Defendants sent here. There is no question that the subject faxes advertise the commercial availability and quality of Defendants' service. Exhibit A. Again, Defendants' attempt to make a profit through the use of Plaintiff's expertise, and not its checkbook should not trump the fact that the subject faxes are clearly advertising the commercial availability and quality of Defendant's services.

Defendants' reliance upon *N.B. Industries, Inc .v. Wells Fargo & Co.*, 465 Fed.Appx. 640, (9th Cir. Jan. 6, 2012) fails for the same reason. In *N.B. Industries, Inc.*, the court held that the subject fax was not an advertisement; rather it was an application for an "Asian business leadership award." A faxed application is far different than the advertisements Defendants faxed in this case. Exhibit A. There simply is no way around the fact that Defendants sent out the three subject faxes in order to advertise the quality and commercial availably of their service to entice Plaintiff to joint Defendants' network. Although there is no testimony, yet, as to why Defendants wanted to lure Plaintiff, Plaintiff

anticipates that discovery will show the more doctors Defendants signed up to their network the more profit Defendants would make.

Another case cited by Defendants *Rudgayzer & Gratt v. Enine, Inc.*, 779 N.Y.S.2d 882, 885-86 (N.Y. Sup. App. 2004), actually undermines Defendants position altogether. In *Rudgayzer,* a New York court stated "In reaching this determination we do not limit our scrutiny to the four corners of the fax. Rather, such factors as who the sender is, as well as his motives, purposes and intentions for sending the fax, are all relevant." Here, at this stage of litigation, the Court is limited to the allegations in the Complaint, and the four corners of the subject faxes. What we do not know yet, but will learn through discovery, are the motives and purpose of sending Plaintiff these subject faxes. What Plaintiff expects to learn is that Defendants must "advertise" their services to doctors across the country in order to make money through other avenues.

Moreover, several courts have rejected arguments that particular junk faxes were not advertisements because they contained educational information or did not directly offer the sale of any goods or services. *See e.g. St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc, et al.,* Case No. 12-CV-02224 (E.D. Mo. March 13, 2013) (Hamilton, J.), attached as <u>Exhibit D</u>; *Sadowski v Med1 Online, LLC*, 2008 WL 489360 (N.D. Ill Feb. 20, 2008); *Holtzman v. Turza*, 2008 WL 2510182 (N.D. Ill June 18, 2008) (Gettelman, J.); *Green v. Time Insurance Company*, 629 F. Supp. 2d 834 (N.D. Ill. 2009).

 For all the above reasons, Defendants' argument that its junk faxes are not "advertisements" under the TCPA should be rejected.

**II.      The subject faxes do not contain proper opt-out notices.**

Defendants contend that the opt-out notices contained in the three faxes are "substantially compliant" with the TCPA.  Again, Defendants are wrong on the law and the facts. The correct legal standard is "compliance" not "substantial compliance."  Moreover, even if "substantial compliance" were sufficient, Defendants' opt out notice is not substantially compliant because it is not "clear and conspicuous," and because it does not contain a domestic toll free fax number. Exhibit A. Either of these failures, independently, would be enough to mandate that the Court deny Defendants' motion to dismiss.

The TCPA creates a private right of action for "violations of this subsection or regulations prescribed under this subsection." 47 U.S.C. § 227 (b) (3) (A). Subsection (b) of the TCPA authorizes the FCC to "prescribe regulations to implement the requirements of this subsection," specifically including regulations governing opt-out notice requirements. 47 U.S.C. § 227 (b) (2) (D).

Pursuant to this authority, the FCC promulgated 47 C.F.R. § 64.1200 (a) (4) (iv) (Exhibit E), which states:

> A facsimile advertisement that is sent to a recipient that has provided express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a) (4) (iii) of this section.

Paragraph (a) (4) (iii) states:

> The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if--
>
> > (A) The notice is clear and conspicuous and on the first page of the advertisement;
> >
> > (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the

requirements under paragraph (a) (4) (v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a) (4) (v) of this section;

(D) The notice includes--

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

Defendants' fax advertisements did not contain an opt-out notice compliant with §

64.1200 (a) (4) (iii).[2] *See Clearbrook v. Rooflifters, LLC*, No. 08-CV-3276, 2010 WL 2635781,

at *4 (N.D. Ill. Jun. 28, 2010) (Cox, M.J.); *Bais Yaakov of Spring Valley, v. Alloy, Inc. and*

---

[2] The validity of a regulation promulgated by the FCC can only be challenged by a direct appeal from the FCC order implementing the regulation to a federal appellate court. 28 U.S.C. § 2342 (1) ("The court of appeals ... has exclusive jurisdiction to enjoin, suspend, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders of the Federal Communications Commission made reviewable by section 402 (a) of title 47."); *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 467 (1984). As the Supreme Court has noted, courts owe substantial deference to the FCC's interpretation of its own regulations. *Talk America, Inc. v. Michigan Bell Tel Co.*, __ U.S. __, 131 S. Ct. 2254, 2261 (2011). In fact, the FCC's interpretation is controlling unless it is "'plainly erroneous or inconsistent with the regulation[]' or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Id.* (quoting *Chase Bank, NA v. McCoy*, 562 U.S. __, 131 S. Ct. 871, 880 (2011).

*Channel One, LLC*, Case 7:12-cv-00581-CS, Document 39, Opinion and Order, pp. 20-21

(S.D.N.Y. Mar. 28, 2013) (Seibel, J.) (Exhibit F).

**A.    Defendants' fax advertisements failed to include a compliant opt-out notice in two distinct ways.**

**1.    Defendant's Opt-Out Notice Was Not "Clear and Conspicuous."**

None of Defendants' opt-out notices satisfied the requirement that they be "clear and conspicuous." *See* § 64.1200 (a) (4) (iii) (A). The FCC has defined "the term clear and conspicuous" as "a notice that would be apparent to the reasonable consumer, separate and distinguishable from the advertising copy or other disclosures. With respect to facsimiles and for purposes of paragraph (a)(4)(iii)(A) of this section, the notice must be placed at either the top or bottom of the facsimile." See § 64.1200 (f) (3). THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY (Oxford University Press, 1971), p. 99, defines the word "apparent" as: "1. Meeting the eyes, showing itself; open to sight, visible, plainly seen" … "2. Conspicuous, prominent." … "3. Manifest to the understanding; evident, plain, clear, obvious; palpable."[3]

Defendants' opt-out notice is the same in all three faxes received by Plaintiff. Exhibit A. For each opt-out notice, the font is the smallest font of the entire fax. By making the opt-out notice the most difficult portion of the fax to read, Defendants failed to make it "clear and conspicuous;" *i.e.* "apparent to the reasonable consumer." Defendants' notice fails the test of "clear and conspicuous." A notice can never be "apparent" "conspicuous" or "plainly

---

[3]    Finding that has found that the term "clear and conspicuous" "is a staple in commercial law," the Seventh Circuit has also provided guidance in other similar circumstances, such as the Fair Credit Reporting Act ("FCRA"), the Truth In Lending Act ("TILA") and the Uniform Commercial Code ("UCC"). *See Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 729 (7th Cir. 2004) (FCRA case) and *Lifand v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 805-06 (7th Cir. 2001) (TILA case).

seen" to the "reasonable consumer" when the remainder of the advertisement contains

larger type. Second, the opt-out notice is not in "boldface" nor is it in "capital lettering."

Even if it is legible to some people, the eye is not drawn to it. To the contrary, it appears to

be designed to ensure minimal or no attention from the recipient. The eye is drawn to the

remainder of the document.

As a result, Plaintiff's adequately allege that Defendants' fax advertisement opt-out

notices were not "clear and conspicuous" as required by § 64.1200 (a) (4) (iii) (A).

> **2.      Defendants' opt-out notice did not include the required
> domestic toll free facsimile number.**

Plaintiff's Complaint alleges that Defendants' opt-out notice failed to include a

domestic toll free number. (Doc. 1, ¶ 16); and Exhibit A. A fully compliant opt-out notice

must include "A domestic contact telephone number **and** facsimile machine number for the

recipient to transmit such a request to the sender." (emphasis added)  § 64.1200 (a) (4)

(iii) (D) (1). None of Defendants' opt out notices contain a toll free facsimile

number. Exhibit A. As a result, none of the opt-out notices are compliant. Defendants do not

make any concrete argument to explain why the failure to include a fax number is

"compliance" or "substantial compliance" with the requirement.

> **3.      "Substantial compliance" is not the standard, and Defendants did
> not "substantially comply" with the opt-out notice requirement.**

Defendants cannot cite to the TCPA or any FCC regulation that "substantial

compliance" is good enough with respect to whether a sender's opt-out notice is adequate.

Instead, the FCC states "A notice contained in an advertisement complies with the

requirements under this paragraph **only if** ..." (emphasis added) 47 C.F.R. § 64.1200 (a) (4)

(iii). There is no language that states, or even suggests, that "substantial compliance" is good enough.

As a result, Defendants cite to a couple of out of state court opinions for their support. First, Defendants cite to *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, Case No. 08-cv-481-bbc, 2009 WL 602019 (W.D. Wis., March 9, 2009). The portion of the opt-out notice requirement that was at issue in *Landsman & Funk* was the regulation that states: "The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days…" *Id.* at *5-7. The defendant failed to include the words "within 30 days" and instead stated that "Failure to comply within a reasonable time with a request to opt-out would be unlawful." *Id.* at *1. The Wisconsin court held that failure to include "within 30 days" was not a violation because "it does provide the information necessary to inform recipients about the time limitation on its duty to comply." *Id.* at *6. The Wisconsin court, however, did not change the compliance standard to "substantial compliance." Here, Defendants failed to comply with the opt-out notice requirement because the notice is not "clear and conspicuous" and Defendants failed to include a domestic toll free facsimile number. Even if "substantial compliance" was the standard, Defendants cannot "substantially" comply with a "clear and conspicuous" standard and cannot "substantially" comply with whether they included a domestic toll free fax number. Defendants either comply, or not. In this case, the allegations of Plaintiff's Complaint shows Defendants did not comply.

Defendants also cite to a California decision, *Magana Cathcart McCarthy v. CB Richard Ellis, Inc.*, 174 Call.App.4th 106, 112 (Cal. App. 2d Dist. 2009). However, the *Magana*

*Cathcart* decision did not uphold a "substantial compliance" standard. Instead, the appellate court merely noted that the trial court in California issued a "threshold ruling" that "substantial compliance" to the opt-out notice requirement to faxes that were sent before the opt-out notice requirement was in place (August 2006) was appropriate. *Id.* at 112. The appellate court reversed the trial court on the ground that the trial court had not followed the proper procedural channels. *Id.* at 114-21. As a result, the *Magana Cathcart* reference to "substantial compliance" in setting forth the posture of the case does not endorse that standard, provide a rationale for doing so, or assist this court in any way.

For all these reasons, this Court should reject Defendants' "substantial compliance" argument.

## III.   Defendants' attempt to moot Plaintiff's claims is improper.

Defendants' attempt to "moot" Plaintiff's claims by making an offer of judgment is unavailing for a number of reasons. First, Defendants' offer of judgment was not accepted, rendering it a legal nullity. Second, Defendants' offer of judgment was not made until after Plaintiff had filed a motion for class certification. Because Plaintiff acted diligently in pursuing class certification, courts have uniformly held that attempts to "pick off" the named class representative on an individual basis and "moot" the lawsuit are improper and unavailing.

### A.   "Pick-off" attempts are disfavored by federal courts.

Defendants are employing a defense tactic known as "picking off" or "buying off" the class representative in an attempt to frustrate the claims of absent class members by claiming the class action is "moot." Federal courts are universally in agreement that the pendency of a timely-filed class certification motion foils the "pick off" attempt. *E.g.,*

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir.1981) ("We conclude that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when, as here, there is pending before the district court a timely filed and diligently pursued motion for class certification.")

Class "pick off" maneuvers are disfavored because they lead to unnecessary satellite litigation, and a scramble to substitute serial named class representatives. *See, e.g.,* Note, "You Can Pick Your Friends, But You Cannot Pick Off the Named Plaintiff of a Class Action: Mootness and Offers of Judgment Before Class Certification," 4 *Drexel L. Rev.* 523 (2012). As the United States Supreme Court has noted:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Consequently, federal courts have generally held that "pick offs" are unavailing to moot a putative class action. *See Pitts v Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011) ("A rule allowing a class action to become moot "simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs" before the named plaintiffs have a chance to file a motion for class certification would thus contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims."); *Weiss v. Regal Collections*, 385 F.3d 337, 344, 347-48 (3d Cir.2004) ("[a]bsent undue delay in filing a motion for class certification ... where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of

the class complaint"); *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir.2011) (holding that "a nascent interest attaches to the proposed class upon the filing of a class complaint such that a rejected offer of judgment for statutory damages and costs made to a named plaintiff does not render the case moot under Article III").

The Eleventh Circuit has not weighed in on whether the plaintiff must file the class certification motion at the outset to avoid a "pick off" maneuver, or whether a post-"pick off" motion is enough. *But see Zinni v. ER Solutions, Inc.,* 2012 WL 3641911 (11th Cir. Aug. 27, 2012) (holding that only complete Rule 68 settlement offer moots case, without discussing class action implications); *Tucker v. Phyfer,* 819 F.2d 1030 (11th Cir. 1987)(putative class representative's claims mooted because plaintiff was no longer a minor by the time class certification motion was heard). In *Mullinax v. United Marketing Group, LLC,* 2011 WL 4085933 (N. D. Ga. 2011), the court recently followed *Pitts* and *Zeidman* and held that a "pick off" prior to the filing of a timely class motion would not moot the class claims, but the court left open the question whether the "pick off" would render the named plaintiff an adequate class representative.

**B.    Defendants' offer of judgment was withdrawn.**

"An unaccepted offer is considered withdrawn, but it does not preclude a later offer." Fed. R. Civ. P. 68 (b). As recently stated by Justice Kagan of the United States Supreme Court,

> [A]n unaccepted offer of judgment cannot moot a case. When a plaintiff rejects such an offer – however good the terms – her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer – like any unaccepted contract offer – is a legal nullity, with no operative effect. As every first-year law student learns, the recipient's rejection of an offer 'leaves the matter as if no offer had ever been made.'

*Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1533 (2013) (Kagan, J.,

dissenting), *quoting Minneapolis & St. Louis R. Co. v. Columbis Rolling Mill*, 119 U.S.

149, 151 (1886).

"Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies

that 'an unaccepted offer is considered withdrawn.'" *Id.* at 1534. Justice Kagan notes that

"[t]o this point, what I have said conflicts with nothing in the Court's opinion" as the

majority did not reach whether an unaccepted offer that fully satisfies a plaintiff's claim is

sufficient to render the claim moot. *Id.* The Ninth Circuit has recently agreed with the

Supreme Court's dissenting opinion. *See Diaz v. First Am. Home Buyers Protection Corp.*, 732

F.3d 948, 954-55 (9th Cir., Oct. 4, 2013) ("We therefore hold that an unaccepted Rule 68

offer that would have fully satisfied a plaintiff's claim does not render that claim moot. This

holding is consistent with the language, structure and purposes of Rule 68 and with

fundamental principles governing mootness.")

Here, on September 11, 2013 Defendants made a Rule 68 Offer of Judgment.

However, Plaintiff never accepted Defendants' Rule 68 Offer of Judgment. As a result,

Defendants' Rule 68 Offer of Judgment was withdrawn. Therefore, Defendants' motion

should be denied.

### C.   Defendants' offer of judgment was issued after Plaintiff filed its motion for class certification.

Because the Third, Fifth, Ninth and Tenth Circuits do not support Defendants'

position, Defendants rely upon the Seventh Circuit's decision in *Damasco v. Clearwire Corp.*,

662 F.2d 891 (7th Cir. 2011). In *Damasco,* the Seventh Circuit, contrary to every other

Circuit Courts of Appeals that has addressed the issue, determined that a putative class

representative can avoid a "pick off" maneuver only by first filing a motion for class

certification. *Damasco* thus envisions and encourages a race to the courthouse between the putative class plaintiff and the defendant seeking to moot the case. In *Damasco*, the plaintiff requested that the Seventh Circuit "create an exception to mootness in potential class actions where defendants offer relief to named plaintiffs before they have 'a reasonable opportunity to seek certification.'" *Damasco*, 662 F.3d at 895. The Seventh Circuit then held that pleading class action allegations in the complaint and pursuing those class claims are not enough. *Id*. at 895-96. Instead, the Seventh Circuit held that the "simple solution to the buy-off problem" is for the plaintiff to "move to certify the class at the same time that they file their complaint." *Id*. at 896. The plaintiff can then "also ask the district court to delay its ruling to provide time for additional discovery or investigation." *Id*.

*Damasco's* rationale of filing a motion for class certification as soon as the complaint is filed makes little sense in the Middle District of Florida. Here, the local rules require that a plaintiff file a motion for class certification within 90 days after commencing the lawsuit. L.R. 4.04 (b). In any event, Plaintiff here acted diligently by filing the class motion much earlier, before Defendant issued their Rule 68 Offer of Judgment. Plaintiff filed its Motion for Class Certification on September 5, 2013 (Doc. # 10). Six days later, on September 11, 2013, Defendants served a Rule 68 Offer of Judgment. Exhibit C. Hence, even if the Court were to adopt the minority *Damasco* approach, Defendants' pick off offer came too late.

Defendants wrongly contend that they made the Rule 68 Offer of Judgment on September 4, 2013 by sending an unsigned offer before Defendants filed appearances in this action. Exhibit B. The September 4 ,2013 draft Offer of Judgment was not signed by anyone. *Id.* Moreover, the draft Offer of Judgment was sent to Plaintiff's counsel by one Bill Martin, who is not a member of the Middle District of Florida and who has never entered an

appearance in this case. (Doc. # 12). Defendants did not file any appearance of counsel in this case until after the class certification motion was filed, September 9, 2013 (Doc. # 11). Defendants then sent the final and signed Rule 68 Offer of Judgment to Plaintiffs on September 11, 2013 by A. Benjamin Gordon. Exhibit C.

The lack of signature from the draft Offer of Judgment by an attorney who was not of record is significant. "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11 (a). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* To look at this problem through a different lens, what if Plaintiff had accepted Defendants' unsigned offer of judgment? Because Defendants never signed it, they were free to back out of the draft offer of judgment at any time, making it a legal nullity. Accordingly, the September 12 Offer of Judgment is the operative legal document and came too late to successfully "moot" Plaintiff's claim, even under the Seventh Circuit's unique standard.

### D. Even if the Court determines the Offer of Judgment was made on September 4, 2013 the law indicates Defendants' pick-off attempt is improper.

To make their argument Defendants must ignore the overwhelming authority that holds Defendants pick-off attempt must fail. The Third, Fifth, Ninth and Tenth Circuits are all in agreement that absent "undue delay in filing a motion for class certification" an attempt to "buy-off" the named plaintiff with a Rule 68 Offer of Judgment cannot moot a class action. *See e.g. Weiss*, 385 F.3d at 348. Here, there has not been an "undue delay in filing a motion for class certification." Plaintiff filed its Class Action Complaint on August 12, 2013 (Doc. # 1). Due to Local Rules 3.01 (b) and 4.04 (b), which sets up an automatic 14

day period for the opposing party to file a response to motions and gives Plaintiff 90 days

to file a Rule 23 motion for class certification, Plaintiff did not file a Motion for Class

Certification along with its Class Action Complaint. On September 5, 2013, Plaintiff then

filed a motion for class certification (Doc. # 10). On September 23, 2013 the Court then

entered an order staying Plaintiff's Motion for Class Certification until further order of the

Court. (Doc. # 17). Then the parties filed their Case Management Report addressing a Rule

23 class certification discovery schedule. (Doc. # 33). As a result, Plaintiff has been

pursuing its class certification claims from the moment it filed its Class Action Complaint.

Although the 11th Circuit has not yet ruled on the "buy-off problem," it would make

little sense for this Court to follow *Damasco*. The district courts within the Seventh Circuit

do not have a local rule similar to the Middle District of Florida's Local Rule 4.04 (b) that

gives a plaintiff 90 days to file a Rule 23 motion for class certification. *See* Wis. ED Local

Rules; Wis. WD Local Rules; Ill. ND Local Rules; Ill. CD Local Rules; Ill. SD Local Rule 23-1;

Ind. ND Local Rule 23-1; and Ind. SD Local Rule 23-1.  In this District, therefore, the

*Damasco* court's solution to the "buy-off problem" of filing a motion for class certification

with the Complaint is not necessary. Here, plaintiffs are instructed through the Local Rules

that they have 90 days to file a motion for class certification. L.R. 4.04 (b). Moreover, the

local rule mandating a 14-day period to file a response to any motion also poses a problem

to the *Damasco* solution to the "buy-off problem." L.R. 3.01 (b).

If this Court were to follow *Damasco* then plaintiffs will be forced to file motions for

class certification before even obtaining service on the defendants. This will cause

significant procedural problems and administrative overhead, causing not only the parties

but the court staff to waste additional resources. For example, if the defendants are served

with the motion for class certification and the Court has not yet issued an order as to the motion, must defendant file a motion with the Court asking for more time to respond to the motion for class certification? Must a Plaintiff include in any motion for class certification that is filed with the complaint a paragraph asking for the Court to delay briefing on the motion for class certification? If so, how is that any different than including the "Class Action Allegations" in the Complaint, which is already required by L.R. 4.01 (a)? Local Rule 4.01 (a) already requires that a plaintiff plead "under a separate heading styled 'CLASS ACTION ALLEGATIONS,' detailed allegations of fact showing the existence of the several prerequisites to a class action as enumerated in Rule 23(a) and (b)." The purpose of filing a motion for class certification as expressed in *Domasco* therefore just does not exist in this district. As a result, this Court should follow the Third, Fifth, Ninth and Tenth Circuit's "undue delay in filing a motion for class certification" standard and deny Defendants' motion. *See Weiss*, 385 F.3d at 348.

In short, Defendants' bumbling two step attempt to "pick off" Plaintiff's claims was ineffective as a matter of law, and their argument that Plaintiff's claims are "moot" should be rejected.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny

Defendants' motion to dismiss as to the TCPA claim. As stated above, the "conversion" claim

(Count II) is voluntarily dismissed.


Dated: December 6, 2013                    Respectfully submitted,

                                           NEUROCARE INSTITUTE OF CENTRAL
                                           FLORIDA, P.A., a Florida professional
                                           association, individually and as the
                                           representative of a class of similarly-situated
                                           persons,


                                   By:     /s/ Phillip A. Bock
                                           One of Plaintiff's attorneys

Ryan M. Schmidt (Fla. Bar No. 95731)       Phillip A. Bock (Fla. Bar No. 93895)
Law Offices of Jon B. Coats, Jr., P.A.     BOCK & HATCH, LLC
1519 Dr. M.L.K., Jr. St. N                 134 North La Salle Street, Suite 1000
St. Petersburg, FL 33704                   Chicago, IL  60602
Telephone: 727-456-4462                    Telephone:  312/658-5500

## CERTIFICATE OF SERVICE

The undersigned attorney hereby verifies that, on December 6, 2013, he filed the foregoing response brief using the Court's CM/ECF system, which electronically serves a copy upon each counsel of record.

/s/ Phillip A. Bock