# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**NEUROCARE INSTITUTE OF CENTRAL FLORIDA, P.A., a Florida professional association, individually and as the representative of a class of similarly situated persons,**

**Plaintiff,**

**v.** **Case No: 6:13-cv-1228-GAP-GJK**

**HEALTHTAP, INC. and JEFFREY POLLARD, M.D.,**

**Defendants.**

---

## ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendants Healthtap, Inc. ("Healthtap") and Jeffrey Pollard, M.D. (Doc. 34), and Plaintiff Neurocare Institute of Central Florida, P.A.'s ("Neurocare") response thereto (Doc. 46), and Defendants' Reply (Doc. 58).

### I. Background

Healthtap sent facsimiles ("faxes") to physicians promoting services and opportunities available on Healthtap's website, which is designed to connect doctors to potential patients. (Doc. 1 at 3). After receiving several faxes from Healthtap, Neurocare filed a two count complaint alleging that the faxes violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and that Healthtap converted fax machines, toner, paper, and employee time when the faxes were printed. (Doc. 1 at 9 - 14). The TCPA prohibits specific types of telephone and fax solicitations and allows a recipient of prohibited solicitations to recover damages. *See* 47 U.S.C. § 227. Shortly after service of process, Healthtap made an offer of judgment to Neurocare pursuant to Federal Rule of Civil

Procedure 68.[1] The following day, Neurocare filed a motion to certify a class of more than 39 entities that received the faxes. (Doc. 10).

Healthtap's Motion to Dismiss (Doc. 34) contends that Neurocare lacks standing because the offer of judgment made the day before Neurocare's motion for class certification moots the case. Healthtap also alleges that the faxes do not constitute "advertisements" within the meaning of the TCPA, and that the opt-out notices contained in the faxes substantially comply with the requirements of the TCPA. Furthermore, Healthtap asserts that Neurocare has failed to state a claim for conversion.

## II. Standards

### A. Standing

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991)); *see also Holy Cross Hosp., Inc. v. Baskot*, 2010 WL 5418999, at *2 (S.D. Fla. Dec. 23, 2010) ("Standing is jurisdictional in nature; therefore, Defendants proceeded under Rule 12(b)(1) to dismiss Count I for lack of standing."). Jurisdictional motions to dismiss under Rule 12(b)(1) come in two forms, facial attacks and factual attacks. A motion to dismiss for lack of standing is a factual attack on jurisdiction when it is based upon a defendant's allegation that an offer of judgment moots the case. *See Warren v. Sessoms &*

[1] The offer provided more than the maximum relief to which the Plaintiff, as an individual, would be entitled.

*Rogers, P.A.*, 676 F.3d 365, 371-72 (4th Cir. 2012). The court may look outside of the pleadings and attached exhibits to the offer and the surrounding circumstances to determine whether the court has jurisdiction. *See id.*

**B. Failure to State a Claim**

A motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is a motion attacking the legal sufficiency of a complaint. In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003).

A complaint is subject to dismissal under Rule 12(b)(6) if it does not allege sufficient facts to "raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To meet that standard, a complaint must contain "well-pled allegations" of fact that are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A recitation of legal elements held together with "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**III. Analysis**

**A. Standing After an Offer of Judgment**

Healthtap contends that the offer of judgment[2] made prior to Neurocare's motion for class

---

[2] Neurocare argues that the offer of judgment was not valid under Rule 11 because it was

certification, moots Neurocare's case because there is no longer a "case or controversy" as required by Article III. The Eleventh Circuit has not yet decided whether an offer of judgment made prior to a motion for class certification moots a case, and there is a split of authority on the issue.

In *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), the Third Circuit held that "[a]bsent undue delay in filing a motion for class certification . . . where a defendant makes a Rule 68 offer . . . that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." *Id.* at 347-48. Similarly, in *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239 (10th Cir. 2011), the Tenth Circuit ruled that "a nascent interest attaches to the proposed class upon the filing of a class complaint" such that an offer of judgment made to the named plaintiff does not have the effect of mooting the case. *Id.* at 1249.

Conversely, in *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2012), the Seventh Circuit held that an offer of judgment made prior to a motion for class certification moots the case. *Id.* at 895-96. The court in *Damasco* determined that "[t]o allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III." *Id.* at 896. District courts in Florida have followed the *Damasco* ruling. For example in

---

not signed and the attorney sending the offer had not yet appeared in this case. This argument is without merit. The Rule 11 requirement that all pleadings, motions, and papers must be signed by the attorney of record, relates to papers filed with the court. *See* Fed. R. Civ. P. 11; *see also Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) (explaining that the purpose of the Rule 11 signing requirement is for the attorney to certify *to the court* that he or she has conducted reasonable inquiry into the facts and the law, and that the filing is not in pursuit of a frivolous claim); *Radecki v. Amoco Oil Co.*, 858 F.2d 397, 403 (8th Cir. 1988) (using common law principals of offer and acceptance when analyzing whether a Rule 68 offer of judgment was binding). Therefore, Healthtap's September 4th e-mail constituted a valid offer of judgment.

*Stein v. Buccaneers Ltd. P'ship*, No. 8:13-cv-2136, 2013 WL 7045328 (M.D. Fla. Oct. 24, 2013),[3] Judge Merryday sided with the *Damasco* rationale in deciding that the defendant's Rule 68 offer of judgment made prior to a motion for class certification mooted the case. *Id.* at *4; *see also Keim v. ADF Midatlantic, LLC*, 12-80577-CIV, 2013 WL 3717737 (S.D. Fla. July 15, 2013) (deciding that the case was mooted by the defendant's offer of judgment); *Krzykwa v. Phusion Projects, LLC*, 920 F. Supp. 2d 1279 (S.D. Fla. 2012) (holding that a full settlement offer moots a case).

The issue here is a conflict between the results of a Rule 68 offer of judgment which, under the *Damasco* rationale permits the Defendant to "pick off" the Plaintiff, and the underlying purpose of Rule 23, which is to enable small claims that would be impractical to litigate individually to be brought collectively. *See Pitts v Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011) (Rule 23's principle concern is "aggregation of similar, small, but otherwise doomed claims"). The *Weiss* court seeks to resolve that conflict by allowing a plaintiff a reasonable amount of time after filing the complaint to seek class certification. If the motion is filed without "undue delay," it relates back to the filing of the complaint, thus preserving the court's jurisdiction to proceed notwithstanding an intervening Rule 68 offer of judgment.

While recognizing that the tactic of "picking off" a class representative can be unseemly and predatory, the *Stein* court seeks to resolve the conflict by using the motion to certify the putative class as a "distinct boundary," stating "the constitutional requirement of a 'case or controversy' is not negotiable or subject to casual 'exception,' is not subordinate to the economic aspirations of either the plaintiffs or the plaintiffs' lawyers, and is not subject to circumnavigation by legislation or rule, either an agency's rule or a court's rule." *Stein,* No. 8:13-cv-2136, 2013 WL 7045328, at

[3] *Stein* is on appeal in the Eleventh Circuit. *Stein v. Buccaneers Ltd. P'ship*, No. 8:13-cv-2136, Doc. 28 (M.D. Fla. filed Nov. 25, 2013).

*3. This of course means that, as a practical matter, class action plaintiffs must move to certify the class at the same time that they file their complaint, even if the motion is premature. *Damasco*, 662 F.3d at 896-97. As noted by the *Damasco* Court, "[i]f the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation." *Id.*

It will be the rare occasion for a class action plaintiff to be fully prepared to seek class certification at the time the class action complaint is filed. Indeed, the *Stein* court suggests that class action plaintiffs should proceed "promptly" (not immediately) and that additional time may be necessary to establish the class. *Stein* No. 8:13-cv-2136, 2013 WL 7045328, at *4. This additional time is already established by Local Rule 404(b) which provides a 90 day window[4] after the complaint is filed within which to file the motion for class certification. The use of this rule, therefore, harmonizes the conflict between *Damasco* and *Weiss* by providing the bright-line sought by *Damasco* and *Stein,* consistent with the "undue delay" standard advanced by *Weiss*.

The relation back approach, in conjunction with Local Rule 404(b), recognizes the nexus between the interest of the class of aggrieved individuals and the interest of the named plaintiff. *See Weiss*, 385 F.3d at 347-48. Although this interest has not been perfected by certification of the class, it is invoked by the filing of the class action complaint. *See id.* When a plaintiff's motion for class certification is filed within the 90 day period allowed by Local Rule 404(b), and the plaintiff has otherwise fulfilled its duty to diligently pursue class certification, the "case or controversy" requirement of Article III is satisfied by relation back to the filing of the complaint. Because the motion for class certification here was filed less than 90 days from the filing of the Complaint, the

[4] While the Court specifically refers to the 90 days window stated in Local Rule 404(b), it should be noted that courts can and do extend that timeframe in appropriate circumstances. The relation back rule adopted in this Order would include any additional time authorized by the court.

Defendants' offer of judgment did not moot the case, and the Defendants' motion to dismiss for lack of standing is denied.

**B. TCPA**

The TCPA prohibits the use of a fax machine to send unsolicited advertisements. 47 U.S.C. § 227(b)(1)(C). The Plaintiff has alleged that the faxes at issue were unsolicited and violated the TCPA. Healthtap does not dispute that it sent the faxes in this case, however, it argues that it did not violate the TCPA because the subject faxes were not advertisements and the faxes substantially complied with the opt-out requirements of the statute.

**1. Whether the Faxes Were Advertisements**

The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Accordingly, if a fax contains no commercial element, as Healthtap contends in this case, it cannot violate the TCPA. Courts have interpreted the word "commercial" to refer to the buying or selling of goods or services. *See, e.g., Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007) (determining that faxes which promoted a research discussion with no opportunity for monetary gain was not an advertisement); *Rudgayzer & Gratt v. Enine, Inc.*¸ 779 N.Y.S.2d 882, 885 (N.Y. Sup. App. 2004) (determining that faxes were advertisements when they were designed to induce recipients to inquire about purchasing products from the sender). Further, the Federal Communication Commission ("FCC") recognizes that services which are ostensibly free may serve as a mere pretext for commercial services. *In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3814 (Apr. 6, 2006) (commenting that communications "that promote

goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition."); *G.M. Sign, Inc. v. MFG.com, Inc.*, No. 08-C7106, 2009 WL 1137751, at *2 (N.D. Ill. Apr. 24, 2009) ("While the initial service offered by such an advertisement may indeed be free, it is clear that such a fax is intended to induce the recipient to take advantage of the commercial availability or quality of goods and services in that forum."). Such advertisements must be distinguished on a case-by-case basis, from faxes "that contain only information, such as industry news articles, legislative updates, or employee benefit information." *Implementing the Tel. Consumer Protection Act*, 21 F.C.C.R. at 3814-15.

In the present case, the faxes provided information regarding Healthtap's website on which doctors answer medical questions posed by the public. (Doc. 1-1 at 2). Explicit in Healthtap's fax promotion is the assertion that participation on the website "enables physicians to market themselves and build their practice's clientele by attracting millions of patients online . . . ." (Doc. 1-1 at 2). This is not unlike *G.M. Sign, Inc.*, where the court found a commercial purpose in fax promotions that invited recipients to join a free online marketplace where it hoped to connect buyers and sellers of goods and services. *See G.M. Sign, Inc.*, No. 08-C7106, 2009 WL 1137751, at *1. The point of the Healthtap website is to connect doctors to potential patients. Accordingly, Neurocare has sufficiently pled that the faxes related to the "commercial quality or availability" of Healthtap's services.

**2. The Safe Harbor**

47 U.S.C. § 227(b)(1)(C) provides a safe harbor for the transmission of an unsolicited fax advertisement. That safe harbor provision has three elements that must be met: (1) the sender and recipient have an established business relationship; (2) the recipient voluntarily shared its fax number within the context of the established business relationship or the recipient voluntarily made

its fax number available for public distribution (for example, by submitting the fax number to a website or directory); and (3) the fax contained an opt-out notice as required by the statute and applicable FCC regulations. *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).

In their Motion to Dismiss, Defendants seek a ruling from the Court that the opt-out notice contained in their fax advertisement was compliant with the TCPA and applicable FCC regulations. However, the opt-out provision is only one element of the safe harbor. The other two elements are not before the Court. If Defendants intend to seek shelter in the safe harbor, then they must plead its applicability and prove their entitlement to it. *See Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4074620, at *8-9 (W.D. Mich. June 21, 2012) (holding that defendants have burden to establish safe harbor provisions have been met). Thus, compliance with the opt-out requirements is premature at this stage of the case, and will not be considered by the Court.

**C. Conversion**

To state a claim for conversion, a plaintiff must allege that a defendant intentionally exercised dominion or control over chattel, which "so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Rest. (2d) Torts § 222A.[5] The drafters of the Restatement Second have commented that "[c]onversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value." Rest. (2d) Torts § 222A, cmt. c. There is no claim for conversion when the alleged interference, inconvenience, and expense are minimal or unsubstantial. *See, e.g., Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, No. 11-CV-6959, 2012 WL 638765, at *3. (N.D. Ill. Feb.

[5] Florida courts have adopted the Restatement (Second) of Torts when analyzing conversion claims. *See, e.g., Joseph v. Chanin,* 940 So.2d 483, 486 (Fla. Dist. Ct. App. 2006) (applying the Restatement definition of conversion).

23, 2012) (granting defendant's motion to dismiss plaintiff's conversion claim for paper and ink used to print faxes); *Rossario's Fine Jewelry v. Paddock Publications, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (dismissing a conversion claim for a single sheet of paper under the de minimis doctrine).

Here, Neurocare alleges that Healthtap converted fax machines, toner, paper, and employee time when printing the faxes. (Doc. 1 at 13). Because the alleged interference is not serious, major, or important, the complaint fails to state a conversion claim. Even if the interference suffered by the more than 39 putative class members is aggregated, it would still be insignificant.

**IV. Conclusion**

It is therefore, **ORDERED** that:

The Motion to Dismiss (Doc. 34) is **GRANTED IN PART**. Count II for conversion is dismissed. The Motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 25, 2014.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party